## Ex parte CHASE.

[APPLICATION FOR MANDAMUS, TO COMPEL A CHANGE OF VENUE, IN A CRIMINAL CASE.]

1. *Change of venue in criminal case; a right not dependent on the discretion of courts.*—An application for a change of venue in a criminal case, "setting forth specifically the reason why" the applicant " can not have a fair and impartial trial in the county in which the indictment is found," should be granted by the court, if made within the proper time, and in the proper way. This is a right which will be enforced by *mandamus*, if denied.—(PECK, C. J., *dissenting.*)

2. *Same; when treated as error.*—On an appeal after final judgment, the improper denial of this important right, will be treated as error, if properly reserved upon the record, by bill of exceptions or otherwise.— (PECK, C. J., *dissenting.*)

3. *Same; application for, who may be heard on.*—On the hearing of an application for a change of venue, in a criminal case, both parties may be heard on affidavit, in favor of, or against, the allowance of the change of venue.

4. *Ex parte Banks overruled.*—*Ex parte* Banks (28 Ala. 28,) is overruled, so far as it conflicts with the opinion in this case.—(PECK, C. J., *dissenting.*)

This was an application by John W. Chase for mandamus, or other appropriate writ, to compel the city court of Montgomery, Hon. J. D. Cunningham, presiding, to " remove the trial of the case of *The State of Alabama v. John W. Chase*, on an indictment for murder, and now pending in said court, to the nearest county free from exception, ac-

cording to the law of the land;" petitioner's application for a change of venue, having been overruled and refused by said court.

The bill of exceptions sets out in full the application for a change of venue, which was duly sworn to in open court, and stated, in substance, that petitioner was indicted for the murder of a colored man; that by means of false reports of the homicide, industriously circulated in Montgomery, and the adjoining counties of Elmore, Lowndes and Autauga, composed very largely of colored inhabitants, there was great excitement against petitioner, and widespread clamor that "he ought to die;" that one or more newspapers, circulating extensively in said counties, participated in the spread of these false statements, and of the prejudice against him; that he has had no means of counteracting that impression, and that there is no diminution of said prejudice and clamor for petitioner's death; "that there is great prejudice in Montgomery county against the only persons connected with him by consangunity or affinity;" that "when petitioner was brought into court to be arraigned, his counsel having announced in effect that he felt it his duty to apply for a change of venue, Paul Strobach, then one of the jurors, and a member of the legislature from Montgomery county, remarked, in the court-house, that "it was useless to change the venue, unless it could be got to Kamscatka, for he (petitioner) would surely be hung;" that other men of influence in Montgomery county, whose names, petitioner, on account of his confinement and friendless condition, has not been able to obtain, have expressed, openly and publicly, a desire to see him hung; that when petitioner, after his arrest, was known to be coming to Montgomery, that a large mob went to the depot on which petitioner was expected to arrive; that it was only by the deception practiced by the marshal and police, who circulated the report that the prisoner would be on a different train from the one he arrived on, that prisoner escaped being hung by the mob; that when petitioner was put in jail, a large and excited crowd of colored men assembled around, made threatening demonstrations, and threatened to have petitioner's blood; that all this was

known in Montgomery county, and notoriously so to the sheriff of the county, and the police; that the application was not made to procure delay or evade justice, but simply to obtain a fair and impartial trial. "It was admitted that there had been no trial under said indictment, and that the case stands open and untried."

This was all the evidence adduced on the hearing of said application; and upon the foregoing evidence, without anything more, the court overruled the said application, and refused to change the venue, or remove the trial of the case from said city court to any other court, and the defendant duly excepted.

GOLDTHWAITE, RICE & SEMPLE, for appellant.—1. At common law, when a fair and impartial trial could not be had in a criminal case, the court had power, (usually exerted by means of a *certiorari*,) to change the venue.—1 Chitty's Cr. Law, 201, 371; 4 Bl. Com. 320.

As the common law, so far as consistent with our institutions, constitution and statutes, has uniformly been part of the law of Alabama, (whilst a territory as well as a State, *The State v. Cawood*, 2 Stewart, 360,) there was no necessity for a statute merely authorizing a change of venue in this State. Such authority clearly existed by the common law in this State.

The fact, that a statute on that subject has been passed, is persuasive that some change of the common law was designed. The additional fact, that the statutory provision as to change of venue in civil cases, is different and distinct from that as to change of venue in criminal cases, is significant of some design; and when to all this is added the fact, that the change of the common law, which is made by our statutory provision as to criminal cases, is a change in favor of the defendant, the conclusion, that all this legislation meant no more than to arm the primary court with an irrevisable discretion, in the matter of change of venue, either stultifies our own law-makers, or convicts them of criminal indifference to their duty of making effectual, a right clearly guaranteed by our constitution.

20

The right to a fair and impartial trial is guaranteed by our constitution to every accused person. This guaranty is contained in the bill of rights, which is "the governing and controlling part of the constitution."—In the matter of *J. L. Dorsey*, 7 Porter, 293.

The jurisdiction of the supreme court is directly conferred upon it by the constitution. It consists—1st, of "appellate jurisdiction, co-extensive with the State;" 2d, of "a general superintendence and control of inferior jurisdictions," by means of any "remedial and original writs" which may be necessary to give it such superintendence and control.

As to "the appellate jurisdiction," the constitution authorizes the legislature to prescribe "restrictions and regulations, not repugnant to this constitution." But no such authority is conferred, or exists, as to the power to exercise "a general superintendence and control of inferior jurisdictions." This last mentioned power is as free from legislative restriction or impairment, as the "original jurisdiction" conferred by the constitution of the State.

These great powers, thus conferred upon the supreme court, are sacred trusts committed to that court for execution. The protection of the life, liberty and property of each and every citizen, is the object or end for which these powers were conferred. The failure to exercise them, whenever an "inferior jurisdiction" practically denies to the citizen the full measure of protection provided for him by law, is to abandon the trust and to license official outrage upon the citizen.

Beyond all doubt, the statute provisions as to a change of venue by a defendant, in a criminal case, are "for his protection." And reason and the authorities concur in establishing the proposition, that a statute, in so far as it requires anything to be done for the protection of such a defendant, is mandatory, and can not be regarded as directory.—*Clark v. Crane*, 5 Mich. R. 151; *Van Rensselaer v. Witbeck*, 3 Selden, 517.

Unless the action of the inferior jurisdiction, in the matter of change of venue in a criminal case, is revisable in the supreme court, it is plain, that the provisions of the

constitution as to a fair and impartial trial in such case, and of the statute as to a change of venue in such case, practically amount to nothing, and ought to be expunged as useless matter.

But such action of the inferior jurisdiction, when adverse to the defendant, is revisable, in the supreme court, notwithstanding the opinion of two judges, against one, in *Ex parte Banks*, 28 Ala. 28. The statute, in such case made and provided, gives to the defendant a right to a change of venue, when his application conforms to its requirements. *Clark v. The People*, 1 Scammon, 117 ; *Freleigh v. The State*, 8 Missouri, 606 ; see, also, authorities cited in dissenting opinion in *Ex parte Banks, supra.*

Although, after final judgment, the wrongful refusal of a change of venue, is available on appeal, yet before final judgment, *mandamus* is the remedy—the only adequate remedy.—*Steamboat Empire v. Ala. Coal Mining Co.*, 29 Ala. R. 698, and cases therein cited.

*Ex parte Banks*, (28 Ala. 28,) does not come within the reason or justice of the maxim, " *stare decisis.*"—*Rockhill v. Nelson*, 24 Indiana, 422.

JOSHUA MORSE, Attorney-General, *contra.*

PETERS, J.—Under the protection of the constitution of the State, a person charged with an offense, punishable as a crime, in the civil tribunals, is entitled to a speedy trial, " by an impartial jury of the county or district in which the offense was committed." This is an important provision, granted to him by the highest law. And it was deemed of such necessity, by the people, that it has been placed above repeal or denial; and every civil officer of the State, who has been regularly inducted into his office, has solemnly sworn, honestly and faithfully, to support and defend it. It is the duty of the legislative department to pass the proper laws to carry it into effect; it is the duty of the courts to refuse to proceed without its observance ; and it is the duty of the executive to arrest the execution of a sentence, which has been procured in violation of its solemn prohibition ; else the official oaths of these high

functionaries are a mere form of words and no more. It is the sworn duty of every " civil officer of this State," " *honestly and faithfully to support and defend* the constitution" of the State. No article, no section, no clause can be omitted. All are comprehended in the oath of office ; and all are equally binding and imperative. No one can " be deprived of his life, liberty or property, but by due course of law." And in the trial of one charged with an indictable offense, " *an impartial jury*" is as necessary as the copy of the accusation, or the opportunity to be confronted by the witnesses against the accused. Each of these rights stands upon the same section of the constitution ; all are equally imperative and equally necessary for " *a fair and impartial trial.*" And such a trial is the great purpose of the whole remedial law. An unfair and partial trial is a trespass and a wrong, and can not be justified upon any principles of criminal jurisprudence, whatever may be the guilt of the party accused. Trial by an impartial jury is a great fundamental right, and it is not to be presumed, that the people ever intended that its security should depend upon the *mere discretion* of the wisest and the purest judge. It is one of " the great, general and essential principles of liberty and free government," and it can not be too sedulously guarded.—Const. Bill of Rights, Art. I, § 8, 13 ; ib. Art. XV, § 1.

Certainly, a person accused could not be tried, without his consent, out of the county or district in which he committed the offense ; certainly, he could not be tried without an indictment, for an indictable offense ; and he could not be tried without being confronted by the witnesses against him. Yet each of these important privileges, so well secured and understood, rest upon the same section of the constitution, in which it is said, he " has a right" to " a speedy public trial by an *impartial* jury of the county or district in which the offense was committed." For, unquestionably, the word " right," in the beginning of the section, has as much application to, and connection with, the description of the character of the jury, as it has with any other of the great pre-requisites for a fair and impartial trial, required in a regular proceeding, in due course of

law.—Constitution of Alabama, Bill of Rights, Art. I, § 8. This seems perfectly clear, when the elipses of the sentence are supplied, and the governing verb and its expletives are repeated, in their proper places throughout the section.

In accordance with this view, and for the purpose of giving this important right its proper support and protection, the legislature have provided by law, that the accused shall have a fair opportunity to obtain such a jury, as the constitution has secured for his defense. They have required the court, as a part of the instrumentality tending to procure an impartial jury, to grant an order removing the trial to another county, where a fair and impartial trial may be had, through the means of such a jury as the constitution entitles the accused to have. The enactment for this purpose is in the following language: "Any person charged with an indictable offense may have his trial removed to another county, on making application to the court, setting forth specifically the reason why he can not have a fair and impartial trial in the county in which the indictment is found; which application must be sworn to by him, and must be made as early as practicable before the trial, or may be made after conviction, on a new trial being granted."—Revised Code, § 4206.

There is no other marked purpose that can be secured by a change of venue, save the opportunity it affords for a trial "by an impartial jury." This is the sole object of the removal of the trial to another county. All the other requisites for a fair and impartial trial may be had in any county or district of the State. But this one of an impartial jury can not, as the history of such trials, and the policy of the law, which authorizes the removal, everywhere attest. If the removal were never a necessity, for the sake of justice, it would never be granted at all. The constitution gives the right of trial by an impartial jury, and the legislative enactment directs how this right shall be enforced. In all cases, wherein an impartial jury can not be procured in the county where the indictment is found, this right must fail, unless a removal of the trial is allowed. If the main right—the right to have a trial by an impartial jury—is peremptory, as it certainly is, then the means by

which it is to be enforced and defended are also peremptory; otherwise the main right might fail, for want of the proper means to sustain it. No wise construction aims at such result. No wise legislation will permit it. The legislative enactment, then, must be construed so as to support and defend the constitutional grant. To do this, the right to a change of venue, in a proper case, must be peremptory.

To place a great right, like this, upon judicial discretion, if it is not sometimes a mockery of justice, it is at least to disregard the history of judicial decisions. If all judges, or, indeed, if any judge, were perfect, then the people might safely rely upon judicial discretion for a perfect administration of the law. But, unfortunately, it is but too well known that such an assumption is not true, and that the wisest and the best, commit grave errors and make mistakes. Upon the truth of this assumption, this solemn and high tribunal is erected; for this is a court for the correction of errors and mistakes of inferior jurisdictions.—Const. Ala., Art. VI, § 1, 2.

To be satisfied of the insecurity of mere judicial discretion as a power to enforce the due administration of the laws, as this power is sometimes understood, we have but to look to what is declared in books of authority upon this subject. It is said, " the discretion of a judge is the law of tyrants; it is always unknown; it is different in different men; it is casual and depends upon constitution and passion. In the best it is often, at times, capricious; in the worst it is every vice, folly and madness, to which human nature is liable."—1 Bouv. Law Dict., *vide Discretion*, p. 473. This may be, to some extent, an extreme statement of the objection, but every practioner of experience well knows, that it is not without much truth. The writer of this opinion has known a popular judicial officer grow quite angry with a suitor in his court, and threaten him with imprisonment, for no ostensible reason, save the fact, that he wore an overcoat made of wolf skins! Moreover, it can not safely be denied, that mere judicial discretion is sometimes very much interfered with by prejudice, which may be swayed and controlled by the merest trifles—such as the tooth-ache, the rheumatism, the gout, or a fit of indigestion, or

even through the very means by which indigestion is frequently sought to .be avoided.

In further illustration of what judicial discretion ought to be, but not unfrequently is not, I add an extract from an opinion, in a case of national importance, by one of our country's greatest men, and ablest and purest judges. Chief Justice Marshall says : " Courts are mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion ; a discretion to be exercised in discerning the course prescribed by law ; and when that is discerned, it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the legislature ; or, in other words, to the will of the law."—*Osburn v. United States Bank*, 9 Wheat. 738, 866.

Whatever may have been the construction of this important statute heretofore, it is *now* evidently unwise longer to keep so indispensible a right as that of " a fair and impartial trial, in a criminal case, under the uncertain security of a power, so uncontrollable and liable to error as mere judicial discretion—a power that may possibly be misdirected by a fit of temporary sickness, an extra mint julep, or the smell or looks of a peculiar overcoat, or things more trivial than these, which may imperil the due course of justice in the administration of the law. Trifles, however ridiculous, cease to be trifles when they may interfere with a safe administration of the law. All the muniments of " a fair and impartial trial" should be secured by positive and peremptory enactments. The language of the legislature used in the above statute admits of such construction, and we feel bound so to construe it. Here the accused undoubtedly has a claim *de jure* to " a fair and impartial trial," and it is shown in his affidavit that he can not procure this in the county where the indictment was found ; then the trial must be removed, under the limitations of the act, to another county. In such a case the word "may" must be construed as imperative, or the legislative purpose is defeated. This is not to be allowed.—*Newburg & Cocherton Turnpike Co. v. Miller*, 5 John Ch. R. 101, 112, marg.;

*Minor et al. v. Merchants' Bank of Alexandria*, 1 Pet. 46, 64 ; *Stamper v. Miller*, 3 Ark. 212 ; *Alderman Backwell's case*, 1 Vern. 152 ; *King v. Barlow*, Salk. 609 ; *Inhabitants of Darby v. Skinner*, 370 ; *City of Galena v. Amy*, 5 Wall. 705 ; *Supervisors v. United States*, 4 Wall, 435 ; *Thompson v. The State*, 20 Ala. 54 ; *Miller v. Hampton, Adm'r*, 37 Ala. 343, 345 ; Smith's Comm., p. 724, § 595, *et seq.*

But as this construction of the statute will somewhat change the former practice, it is the opinion of the court, that upon an application for a change of venue, affidavit should be heard on both sides.

The decision in the case of *Ex parte Banks*, 28 Ala. 28, is not in accordance with this construction of the section of the Code above quoted, and it is therefore overruled.

The affidavit of the applicant, in this court, shows that the reasons assigned for a change of venue, relied upon in the court below, were sufficient to have justified its allowance. This was also admitted by the counsel for the State in the argument at bar ; therefore, it was error to refuse the application below.

Let the order *nisi* be granted, and entered as required by law.

PECK, C. J., *dissenting.*