### E. B. TAYLOR v. THE STATE.

#### No. 4365. Decided May 23, 1917.

**1.—Murder—Bill of Exception in Limine—Waiver—Change of Venue.**

Where, upon trial of murder, the case was transferred from Travis to Williamson County, from whence the judge of his own motion changed the venue to Bexar County, which was not in the judicial district or an adjoining one, and the defendant, after conviction, raised the question of the invalidity of the order transferring the case from Williamson to Bexar County, not excepting thereto in limine. Held that the order was valid. Davidson, Presiding Judge, dissenting.

**2.—Same—Jurisdiction—Change of Venue—Felony—Subject Matter.**

The contention of appellant that the District Court of Bexar County in which this case was tried, after a change of venue from Travis County to Williamson County and thence to Bexar County, was not a court of of competent jurisdiction and that any judgment it might render either acquitting or convicting defendant would be void, is untenable, as the court had jurisdiction of felonies, and therefore of the subject matter; besides there was no objection in limine. Davidson, Presiding Judge, Dissenting.

**3.—Same—Constitutional Law—Change of Venue—Venue in Criminal Cases.**

There is no provision in the Constitution of this State fixing the venue of criminal cases, and the provision in the Constitution of the United States

concerning venue does not control prosecution of offenses against the laws of the State.   Following Cox v. State, 8 Texas Crim. App., 254.

### 4.—Same—Jurisdiction—Venue—Distinction—Constitutional Law.

Generally speaking, there is a distinction between jurisdiction of the subject matter and venue.   By the Constitution the District Court has original jurisdiction in criminal cases of the grade of felony, while the power to change the venue in civil and criminal cases is vested by the Constitution in the courts, to be exercised in such manner as shall be provided by law.

### 5.—Same—Change of Venue—District Judge—Bill of Exception.

Under article 626, Code Criminal Procedure, the district judge has power, on his own motion, to change the venue of a criminal case to any county in his own or an adjoining district, and article 634, Code Criminal Procedure, provides that such order shall not be revised upon appeal unless the facts upon which the same was based are presented by proper bill of exceptions at the term of the court at which such order was made, and this rule must apply in the instant case.   Davidson, Presiding Judge, dissenting.

### 6.—Same—Limitation—Power to Change Venue.

The contention that article 626, supra, is a limitation upon the power to change the venue given the court by section 45, article 3, of the State Constitution, and that the attempt at the exercise of such power is void although done without objection by the parties is not well taken.   Distinguishing Grooms v. State, 40 Texas Crim. Rep., 327.   Davidson, Presiding Judge, dissenting.

### 7.—Same—Change of Venue—Jurisdiction—Felony—Case Stated.

The Constitution having fixed no venue for the trial of felony, and having expressly vested the power to change the venue in the courts, and specifically declaring that the district courts have jurisdiction to try all felonies, and the District Court of Williamson County having ordered this cause transferred to the District Court of Bexar County, which was not in an adjoining county, etc., and the appellant having made no objection either to the transfer of the cause or the trial of it, the District Court of Bexar County had jurisdiction to render judgment against the defendant.   Davidson, Presiding Judge, dissenting.

### 8.—Same—Charge of Court—Manslaughter—Self-defense—Threats.

Where, upon trial of murder, the evidence raised the issues of manslaughter as well as self-defense, viewed from the standpoint of threats, it was reversible error not to charge thereon as requested.   Prendergast, Judge, dissenting.

### 9.—Same—Evidence—Reconciliation—Rebuttal.

· Where, upon trial of murder, there was evidence of trouble between the parties with reference to the conduct of deceased towards defendant's wife, and that a partial reconciliation between defendant and deceased had taken place thereafter, it was reversible error not to permit the defendant to introduce testimony showing the reasons for this reconciliation, and its cessation some time before the homicide.   Prendergast, Judge, dissenting.

### 10.—Same—Evidence—Plat—Physical Facts—Practice in District Courts.

Where, upon trial of murder, the plat was introduced showing the scene and location of the killing, it is suggested that it is advisable that the plat should be more in accord with the exact physical facts and conditions than that produced on the trial.

### 11.—Same—Evidence—Clothes of Deceased—Rule Stated.

The rule is in murder trials that clothing may be admitted when they serve useful purposes of disputed facts, and as there was some question as to the location of the wounds upon the deceased, this court is not prepared to say that the admission of the clothes of deceased was error.

Appeal from the District Court of Bexar. Tried below before the Hon. W. S. Anderson.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Ward & Bickett, Hart & Patterson, Wilcox & Graves,* and *A. S. Fisher, Jr.,* for appellant.—On question of change of venue, contending that Bexar County not being in the district of Travis or Williamson or an adjoining district to the judicial district in which Travis and Williamson County are embraced, the jurisdiction did not attach to Bexar County: Rogers v. Wadrows, 8 Texas, 65; Taylor v. Williams, 26 id., 586; Wilson v. Catchings, 41 id., 590; Dodson v. Burton, 81 id., 565; Holmes v. Colsom, 178 S. W. Rep., 635; Holly v. State, 14 Texas Crim. App., 515; Frizzell v. State, 30 id., 42; Ex parte Brown, 38 Texas Crim. Rep., 295; Ex parte Massey, 49 id., 60; Snodgrass v. State, 150 S. W. Rep., 178; Coffman v. State, 73 Texas Crim. Rep., 295, 165 S. W. Rep., 939.

On question of court's failure to charge on self-defense, based on threats: Lynch v. State, 6 S. W. Rep., 190; Miles v. State, 18 Texas Crim. App., 156; Swain v. State, 48 Texas Crim. Rep., 102; Graves v. State, 58 id., 44; Duke v. State, 133 S. W. Rep., 432; Robinson v. State, 71 Texas Crim. Rep., 561, 160 S. W. Rep., 456; Christian v. State, 71 Texas Crim. Rep., 566, 161 S. W. Rep., 103; Harper v. State, 75 Texas Crim. Rep., 124, 170 S. W. Rep., 723; Williams v. State, 65 Texas Crim. Rep., 437, 148 S. W. Rep., 772.

On question of court's failure to charge on manslaughter: Yandy v. State, 48 Texas Crim. Rep., 172; Swain v. State, 48 id., 99; Branch's Crim. Law, p. 322, sec. 504.

On question of introduction of clothes of deceased: Gillespie v. State, 190 S. W. Rep., 147.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of introduction of clothes of deceased: King v. State, 13 Texas Crim. App., 280; Johnson v. State, 74 Texas Crim. Rep., 179, 167 S. W. Rep., 737.

On question of court's refusal to charge self-defense on threats: Simms v. State, 9 Texas Crim. App., 593.

On question of change of venue: Preston v. State, 4 Texas Crim. App., 191; Brown v. State, 6 id., 308; Rothschild v. State, 7 id., 529; Krabs v. State, 8 id., 24; Ex parte Cox, 12 id., 666; Bohannon v. State, 14 id., 271; Woodson v. State, 24 id., 153; Sherman v. State, 27 id., 347; Treadway v. State, 65 Texas Crim. Rep., 208, 144 S. W. Rep., 655; Mayhew v. State, 69 Texas Crim. Rep., 187, 155 S. W. Rep., 191; Coffman v. State, 73 Texas Crim. Rep., 295.

DAVIDSON, Presiding Judge.—The verdict of the jury awarded appellant five years confinement in the penitentiary for murder.

The case was transferred from Travis to Williamson County, thence by the trial judge of his own motion on change of venue to Bexar County. After the conviction appellant raised the question of the invalidity of the order transferring the case from Williamson to Bexar County. This transfer order was based upon article 626, C. C. P., and article 3, section 45 of the Constitution. By the terms of the Constitution under the article supra power is vested in the court to change venue in civil and criminal cases to be exercised only in such manner as shall be provided by law, and the Legislature shall pass laws for that purpose. In obedience to this mandate of the Constitution the Legislature enacted article 626, supra. In this article authority is granted district judges to change venue of their own motion of cases to any county in his own or an adjoining district. The statute is express in its limitation of this power, and confines it as above stated to a county in his own district or to some county in an adjoining district. There are other statutes making provisions for the transfer of cases on change of venue, but they do not apply here and are unnecessary to be noticed. By the provisions of the Constitution it will be seen that it is not self-executing, therefore it became necessary for the Legislature to pass suitable laws and provide necessary rules of procedure to carry into effect such provisions of the Constitution. Outside of the granted authority under article 626, supra, the judge has not been clothed with authority to change venue of his own motion. Outside of the provisions of that article the judge can not so act. His orders, decrees and judgments would not be authorized but would be ultra vires and void. The Legislature having exclusive authority to provide for such changes of venue and the procedure to be followed, consequently it necessarily follows that the courts must confine their action within the given procedure and prescribed limitations. It may be well enough to state here that within the limitation set forth the courts may exercise proper legal discretion but discretion ends within the terms of the power granted. Discretion is never arbitrary but must be legal and judicial and not to be exercised outside of but always within legal bounds. This statute constitutes the authority and boundaries of judicial action and discretion. Beyond its terms a judge has no right to act, and there is to him confided no discretion outside of the provisions of the statute. Hipp v. Bizzle, 3 Texas, 21; Watts v. Holland, 56 Texas, 54; art. 626, C. C. P.; art. 3, sec. 45 of the Constitution; Ex parte Chase, 43 Ala., 303-310; 9 Wheaton, at p. 66; 36 Mo., 263, 278; 3 Words & Phrases, pp. 2096, 2097, 2098; 25 S. E. Rep., 797, 801.

Where authority ends the power to act ceases. Discretion to act under a given state of case must be within the controlling grant, and, therefore, subordinate to the legislative authority. It can never rise superior to nor subordinate the legislative grant of power. That power is the supreme test. If this be not true the discretion, if it could be so termed, would not depend upon the granted authority. It would be superior to legislation and the Constitution, and would operate as

an assumption of original power. To so hold would be destructive of governmental authority and would make such assumption of authority a justification for the destruction of sovereignty. Our Constitution provides in article 1, section 10, for a trial by an impartial jury. This is held so sacred that it can not be waived. Article 1, section 10, Constitution. Article 1, section 29 of the Constitution expressly provides that all laws in contravention of the Bill of Rights shall be null and void. A change of venue is a guarantee to the accused of a fair trial by an impartial jury. This is practically if not the main basis underlying both the Constitution and legislation for change of venue. Randall v. State, 34 Texas Crim. Rep., 58; see also the statutes.

This is not a question of venue but is entirely one relating to a change of venue. Its whole basis is bottomed upon the theory that where venue is there may exist a reason for changing that venue. The Constitution was ordained and the statute enacted to get away from the influences and the reasons operating against a fair trial in the county of venue. If venue and change of venue mean the same thing, the statute which provides for a change of venue would be practically useless. There can not exist a possibility for changing venue until there has been venue fixed in some appropriate jurisdiction from which the case is sought to be transferred. Venue is necessary to the exercise of judicial authority. The term change of venue necessarily implies that the venue has been previously fixed in some jurisdiction. So it ought to be clearly seen that the jurisdiction of the court in Bexar County did not and could not attach except by a change of venue, and under this record only by reason of the act of the judge under the provisions of article 626, supra. Bexar County did not and could not have original jurisdiction. The offense charged did not occur in that county, and the deceased did not die in that county, therefore Bexar County could not obtain or exercise jurisdiction by reason of venue. C. C. P., arts. 243 and 258. Therefore, the change of venue is all there is or that can be claimed for the exercise of jurisdiction by the court in Bexar County, and it, therefore, becomes a jurisdictional question. There are three questions, as a general proposition, of jurisdiction: First, of the person; second, of the subject matter, and, third, the power of the court to render the particular judgment it does render. Without a concurrence of these there can be no legal authority in the court to try the case or render a judgment. Ex parte Degener, 30 Texas Crim. App., 566. For collation of cases, 5th vol. Rose Notes, p. 863. That case has been followed in a great number of cases and is now the settled law not only by authority of the decisions but by reason of its inherent strength and correctness. As article 626, supra, has defined and determined the authority of the court, so that authority must remain and can only be exercised. Within its terms the judge may act; outside of those terms he cannot act, and any order outside of that statute he may enter would be void. That the Legislature could have provided wider latitude of power is no reply to their failure or refusal so to do.

Venue in this character of case is jurisdictional. The judge can not exercise authority to try the case except by reason of the change of venue. Outside of that he did not acquire nor could he exercise jurisdiction. He had to look alone to the order of the district judge of Williamson County for his authority to act. Venue did not and could not attach in this case by any act of the grand jury of Bexar County returning an indictment against appellant.

There is some contention that defendant waived his legal rights by not interposing objection in Williamson County when the order of transfer was made. It is not necessary to discuss that question here in view of what we have said. If the order was void there was nothing to waive. The court was without authority to change the venue to Bexar County District Court, and that court was without authority to render the judgment that was rendered. Ex parte Degener, 30 Texas Crim. App., 566. If the court had not authority to make the order transferring the case, it brought nothing and could bring nothing suggesting the question of waiver on the part of defendant, and could confer no jurisdiction upon the Bexar County District Court. Appellant's failure to except to a void order is not a waiver and could not make that order a valid judgment. While not expressly deciding this particular question, as it was not raised, our courts have recognized the limit of judicial authority and discretion as confined within the terms of this statute when the order is made by the judge of his own motion. For compilation of cases see Harris' Ann. Constitution, page 291, note 4. If there is an exception to the above statement it is found in Grooms v. State, 40 Texas Crim. Rep., 327. That case when looked at in the light of its statements is not an exception but recognizes the rule stated by the writer. That case may be better stated by quoting the language used by Judge Henderson. The venue of the case was changed by consent and agreement from Atascosa to Travis County. It will be noticed that Travis County had authority to entertain jurisdiction or venue of land forgery cases. The Grooms case was a land forgery. Atascosa County had jurisdiction to try the offense as well under the statute. Quoting from that opinion Judge Henderson said: "Article 553, supra, authorizes prosecutions for forgery of land titles to be prosecuted also in Travis County; that is, Travis County, as well as the county where the land is situated, has original jurisdiction. But the complaint here is that, while the prosecution could have originated in Travis County, yet there was no authority to transfer the venue by agreement from Atascosa to Travis County; it being insisted in this connection that consent will not confer jurisdiction. Inasmuch as Travis County has original jurisdiction, it occurs to us that it was competent to transfer the jurisdiction from Atascosa to Travis County. If Travis County, under no circumstances, could entertain jurisdiction of the offense, then consent would not give jurisdiction." In that case Travis and Atascosa Counties had jurisdiction or venue. In this case under no possible circumstances could Bexar County have jurisdiction

originally, and could only acquire it if at all by transfer on change of venue. There is a broad distinguishing line drawn by Judge Henderson between the two cases. There is also another proposition that may be involved; that is, the party consented in that case, but Judge Henderson excludes the idea that would give jurisdiction by stating if Travis County could in no event have original jurisdiction, then consent would not confer it. This case and that case is well distinguishable upon the theory of consent. In this case there was no consent, but a waiver is inferred and this inferred from silence when the order was made transferring change of venue. The question involved is not really discussed in that case and is not in point or authority here except as above stated. There is some reasoning indulged by that opinion as to why the judge acted independent of the agreement to change the venue which the opinion states to be supposition. The only reason shown or given was the agreement of parties. This was the only given reason for the judge's action in changing the venue from one county having jurisdiction to another county authorized to exercise jurisdiction. The record in that case does not show the court changed the venue of his own motion. I do not believe that the Grooms case is authority to support the ruling of the trial judge in transferring the case from Williamson to Bexar County. In this case it was transferred by the court of its own motion. In the Grooms case it was transferred by consent, and to a county that could have had original jurisdiction. I do not care to notice this matter further. It seems that in all of those cases the court changed the venue within the terms and requirements of article 626, supra, either to a county in the district presided over by the judge making the transfer, or to some county in an adjoining district. In either event he is clothed with authority to make the order. In such case it would be necessary to reserve exception because the discretion of the transferring judge was legally involved. In such state of case he may exercise judicial discretion, but this discretion must be judicial and within the terms of the law. The order of transfer to Bexar County was not in conformity with the provisions of the statute or within the power of the transferring judge. There are several adjoining districts to that in which Williamson County is situate, but Bexar County is not in one of those districts. We hold, therefore, that the court was without authority to make the order of his own motion under the provisions of the statute. Waiver was not in the case and appellant lost nothing by failing to except to the action of the court in Williamson County.

Error is assigned on the failure of the court to charge on manslaughter and self-defense viewed in the light of threats. Briefly, the facts show that appellant and deceased were first cousins and had been raised together, and were on very friendly terms until about three years prior to the homicide, when deceased began systematic attentions to appellant's wife; he became so persistent that she complained finally

to appellant, her husband. This brought trouble at once between them. Appellant told deceased that if he did not desist such attentions he would fill him with lead, or words to that effect. Deceased promised not to visit the home or wife of appellant any more, nor to pay further attention to her. Deceased made threats against the life of appellant in his absence and in his presence. These were shown upon the trial. On one occasion in a hotel in the City of Austin the deceased went to the room occupied by appellant and had a difficulty with him, having a knife in his hand at the time. It became crucial, and appellant picked up a chair to defend himself, and deceased went away, remarking as he left that next time he would be ready for him. Another witness testified that deceased made threats against the life of appellant, which were conveyed to appellant not a great while before the homicide. Appellant testified that some time after the difficulty about the wife of appellant they again began speaking. This continued for a while when deceased ceased speaking. It was after this that deceased made a threat to the witness Childress. It is in evidence that both deceased and appellant drank, and sometimes to excess. During the day preceding the homicide at night all the parties were in the City of Austin, they living some twelve or fifteen miles east from that city near the little village called Webberville. Appellant and a friend left the city in an automobile belonging to appellant in the direction of his home, he diverting his course here and there to collect money from his patrons; people in whose families he practiced medicine. This carried him varying distances from the main road. About dark he came into the road leading to Webberville not far from a store owned by the witness Littlepage. In the meantime deceased, who was going home near Webberville in a one-horse buggy, stopped something like seventy-five yards before reaching the store. At this point appellant passed in his car, and it is shown by some of the testimony that the car struck the left hind wheel of the buggy. The witnesses heard this and so testified. Appellant said he did not know he had struck the buggy; that he saw it but did not know who it belonged to, and paid no attention to it; that his car was making a great deal of noise by reason of the fact that the left front tire was punctured and was running on a flat tire, and the road being graveled it thereby caused considerable noise, preventing him hearing anything the party at the buggy may have said. Witnesses show that deceased cursed those in the car as sons-of-a-bitch for trying to run over or kill him. They differ as to the expression. Appellant's car passed the store where there were several people but did not stop. The lamps of the car were lighted. It was running slowly, eight or ten miles an hour, and making considerable noise by reason of running on a flat tire. They went about three hundred yards or such matter beyond the store when appellant discovered the car was on fire. He stopped to put out the fire. In the meantime deceased had reached Littlepage's store and was very angry about the way he had been treated with reference to passing his buggy, and said if he

had a pistol he would kill the sons-of-a-bitch in the car. Littlepage and others examined the buggy and found no injury about it. Deceased also said he could whip both of them. Littlepage undertook to detain deceased at his store until the auto should leave, but was unsuccessful. Finding that deceased was going to the auto, or in that direction, he asked his son and perhaps others to go to the car to prevent a difficulty. He said deceased was the maddest man he ever saw, and in his condition and from the threats he made and language used, he was anticipating a difficulty. However, deceased got in his buggy and went on to where the auto was and the difficulty ensued, and appellant killed him. It was at night. The witnesses differ about the relation and situation of the parties at the time. Some of the testimony shows deceased's buggy passed to the right of the car and the shooting occurred. Some of the testimony shows that deceased was out of the buggy at the time the shooting occurred and was on the left hand side where appellant would sit when the car was moving. Appellant testified deceased was very angry when he came up and asked with epithets and opprobrious language in rather an aggravated form, why appellant ran over him, or words to that effect, and was approaching him rapidly. He jerked his pistol and fired three shots. Deceased was on the ground, and some of the witnesses say he ran back toward the store during or as the shooting ceased, leaving his buggy at or near the auto. Appellant was asked by the State if he saw deceased make any demonstration as if to execute his threat, thereby seeking to show that deceased did not make a visible demonstration. The answer of appellant was that he did not see any, that he was not noticing; that he did not have time to see what deceased was doing, and that under the circumstances he thought his life was in danger, and he expected deceased to kill him as he had said on the first meeting, and this idea was enhanced if deceased was drinking, and under such circumstances one of them would be shot; that he did not stop to look to see anything, except in the dark his adversary was approaching, cursing and abusing him in the manner and form indicated by the language and as shown by the testimony, and thinking his life was in danger from the circumstances, he immediately fired. Under this state of the record the court should have given charges upon the law of manslaughter as well as self-defense viewed from the standpoint of threats.

After the trouble between the parties with reference to the conduct of deceased towards appellant's wife an elder brother of deceased, Baylor Burleson, brought about a partial reconciliation between them, and that this accounted for their speaking for some time. Baylor Burleson died. Deceased then refused further to recognize appellant. The court excluded this testimony of reconciliation and reasons for it. The previous trouble between them and failure to speak was introduced. The State shows that they later were speaking for a while and that this ceased. The State having proved this, it was proper to show the reasons of their reconciliation and its cessation. The State was relying

on the fact that they did speak for a while after the insulting conduct to eliminate manslaughter, or at least as a fact tending to show that all of that matter had passed, and the killing was upon malice. Having introduced this testimony, it was proper for appellant to meet and explain how and why this occurred.

Upon another trial if it is thought necessary or advisable to introduce a plat of the scene and location of the killing, that plat should be more in accord with the exact physical facts and conditions than that produced on this trial in the court below. The plat ought to correspond as nearly as is possible with the real conditions and locations at the time and scene of the tragedy.

Another objection was raised to the introduction or admission before the jury of the clothes of deceased. As the matter is presented by the bill of exceptions we are not clear that the court was in error. The matter was in doubt as to where one of the bullets entered, and it was claimed that the introduction of the clothes would show. It was an issue as to whether this bullet entered from the front or the rear. Witnesses somewhat differed on the question. Dr. Wooten testified that it entered from the front and not the rear. It was thought or suggested by State's counsel that the clothes would show. There was also quite a discussion in the testimony as to whether a certain hole in the front of the shirt was the result of a tear or shot. If the hole was caused by a bullet it would have shown entrance in front. The other two wounds, as we understand the testimony, would indicate that they were made neither from the front nor the rear but from the side. Upon another trial this matter with reference to the wounds may be made more clear and distinct. The rule is that clothing may be admitted when they serve useful purposes in the elucidation of disputed facts. We are not prepared to say under the facts of this case as shown that the admission of the clothes was error.

For the reasons indicated this judgment will be reversed and the cause remanded.

*Reversed and remanded.*


PRENDERGAST, Judge, dissenting.

MORROW, Judge.—The effect of appellant's contention, under his assignment relating to the change of venue, is that the District Court in Bexar County, in which his case was tried, was not a court of competent jurisdiction, and that any judgment it might render either acquitting or convicting appellant would be void. If the court was without jurisdiction of the subject matter, then it could render no judgment binding either upon the State or the defendant. White's C. C. P., sec. 539, p. 367; McLain v. State, 31 Texas Crim. Rep., 558; McNeal v. State, 29 Texas Crim. App., 48; Leach v. State, 36 Texas Crim. Rep., 248.

There is no provision in the Constitution of this State fixing the

venue of criminal cases, and the provision in the Constitution of the United States concerning venue does not control prosecutions of offenses against the laws of a State. Cox v. State, 8 Texas Crim. App., 254.

Venue in criminal cases, that is, the place or locality in which prosecutions are to begin, is provided in Vernon's Code of Criminal Procedure, chapter 2, page 123, and under that statute the prosecution for murder may begin in the county where the injury is inflicted, or that in which death occurs. Arts. 241-258.

Generally speaking, there is a distinction between jurisdiction of the subject matter and venue. Article 5, section 8, of the Constitution says: "The District Court shall have original jurisdiction in criminal cases of the grade of felony." Section 45, article 3, is as follows: "The power to change the venue in civil and criminal cases shall be vested in the courts to be exercised in such manner as shall be provided by law, and the Legislature shall pass laws for that purpose." The laws passed for this purpose are embodied in articles 626 to 641, inclusive, Vernon's C. C. P. Article 626 gives the district judge power, on his own motion, to change the venue to any county in his own or an adjoining district. Article 634 provides: "The order of the judge granting or refusing a change of venue shall not be revised upon appeal unless the facts upon which the same was based are presented in a bill of exceptions prepared, signed, approved and filed at the term of court at which such order was made." Other provisions of the statute pertain to the manner of making application for change of venue and its controversion, and state various other circumstances under which change of venue may be granted upon the application of the parties. Article 629 is as follows: "When an unsuccessful effort has been once made in any county to procure a jury for the trial of a felony and all reasonable means have been used, if it be made to appear to the court by the written affidavit of the attorney for the State, or any other credible person, that no jury can probably be had in that county, the court may order a change of venue, and cause the reasons therefor to be placed upon the minutes of the proceedings."

The general rule in this State often declared by the civil courts is, that in civil cases the order of the court changing the venue will not be reviewed in the absence of exception taken at the time and duly preserved, and this rule has been applied in criminal cases in a number of jurisdictions as illustrated by the following cases: State v. Dodson, 72 Mo., 284; State v. Hughes, 61 Mo., 273; State v. Patter, 16 Kan., 80; Leyner v. State, 8 Ind., 490; Gardner v. People, 4 Ill., 83; Brennan v. People, 15 Ill., 536; Kincade v. State, 45 Ark., 536; Haws v. State. 88 Ala., 37; Elleck v. State, 1 Swan (Tenn.), 325.

It is insisted, however, that article 626, supra, providing that the district judge may, on his own motion, order a change of venue to any county in his own or an adjoining district, is a limitation upon the power to change the venue given the courts by section 45, article 3, of the Constitution, and that failing to exercise the power in the manner

prescribed by article 626, it can not exercise it at all; that an attempt to exercise it in any other manner would be void, and that the judgment rendered by the court to which it was transferred would be void, and consequently reviewable in this court, although consented to originally by the parties, or done without objection on their part. The only case in this State that has come to our attention, in which this statute, article 626, was considered, is Grooms v. State, 40 Texas Crim. Rep., 327. The facts are not identical with those in this record, but are sufficiently similar to justify a reference to the case. In that case there was a prosecution for forgery of a land title. The indictment was filed in Atascosa County where the offense was committed and the case transferred by consent to Travis County, which was not in the same or an adjoining district. There was a statute, however, providing that the prosecution could have been begun in Travis County. The matter is disposed of by this court in the following language: "But this article authorizes the change to be made to any county in his own or an adjacent district. Travis County is not in the district adjoining the district in which Atascosa County is situated. But article 619, however, authorizes that if it be shown in the application for a change of venue, or otherwise, that all the counties adjoining that in which the prosecution is pending are subject to some valid objection, the cause may be removed to such county as the court may think proper. In support of the change of venue, it will be presumed that the court acted properly in making the change to Travis County, and that the court was informed by some means that the same reasons existed in the adjoining counties that existed in Atascosa County for the change of venue; and in such case it was authorized to change the venue to any other county, as it might think proper." There is a statement in the opinion that consent will not give jurisdiction. The only cases referred to are those in the brief filed in that case, page 323, and these are civil cases holding that jurisdiction of *subject matter* can not be acquired by consent. Not so with *venue*. Enc. of Pleading & Practice, vol. 22, p. 814.

The Constitution having fixed no venue for the trial of felonies, and having expressly vested the power to change the venue in the courts, and specifically declares that the District Courts have jurisdiction to try all felonies, and the District Court of Williamson County having ordered this cause transferred to the District Court in Bexar County, and the appellant having made no objection either to the transfer of the cause or the trial of it, I do not think that the District Court of Bexar County was without jurisdiction of the subject matter so as to render its judgment void. I do not, therefore, believe that the assignment raising this question should be sustained. I do think, however, that there are other assignments in the record discussed in the opinion of the Presiding Judge which should result in the reversal and remanding of the cause.

PRENDERGAST, JUDGE.—This case should be affirmed, not reversed. I am clearly of the opinion that under the Constitution and statutes the court had the power and authority to change the venue to Bexar County. But even if changed erroneously, appellant clearly waived such error by not excepting by proper bill when the venue was changed.