JACK JAMES v. THE STATE.

No. 5475. Decided October 29, 1919.

Murder—Circumstantial Evidence—Imputing Crime to Another—Alibi.

Where, upon trial of murder, the evidence was wholly circumstantial, and raised the issue that another person than the defendant killed the deceased, and the court in his charge on circumstantial evidence failed to submit this phase of the case, and failed to submit the defense of alibi which was also raised by the evidence, and refused to submit the requested charges thereon, the same was reversible error. Following Wheeler v. State, 56 Texas Crim. Rep., 547, and other cases.

Appeal from the District Court of Newton. Tried below before the Hon. W. T. Davis.

Appeal from a conviction of murder; penalty, thirty years imprisonment in the penitentiary.

The opinion states the case.

*Archie Shaw* and *George C. O'Brien,* for appellant.—On question of imputing crime to another: Kirby v. State, 49 Texas Crim. Rep., 517; Harrison v. State, 47 id., 393; and cases cited in the opinion.

On question of court's failure to charge on alibi: Claunch v. State, 198 S. W. Rep., 307; Ake v. State, 31 Texas, 416, and cases cited in the opinion.

*E. A. Berry,* Assistant Attorney General, for the State.

MORROW, JUDGE.—The appellant was convicted of murder of John Kenny. Kenny was a white man, sixty years of age, whose occupation was that of track and bridge inspector on a tram road belonging to the Kirby Lumber Company, and extending from the

town of Call in a northwesterly direction to Donohoo. He lived in a shack near the railroad, about eight miles from Donohoo, and some distance from Call. About four o'clock on the afternoon of October 2 his dead body, yet warm and bleeding, was found near the tram road, about 250 yards from his place of residence. He had received a gunshot wound on the left side of his head; and there were some wounds on his face, variously described in size, but some of the witnesses suggested that they might have been made by punching his face with a single-barrel shotgun.

The evidence of guilt was wholly circumstantial. It appeared from the circumstances in evidence that immediately after the log train on the tramway passed the residence of deceased, at about three o'clock in the afternoon going in the direction of Call, he had started northwest in the direction of Donohoo on his velocipede—following his custom—and that he had been waylaid by some person who, after shooting him, took the velocipede to a point about 200 yards further northwest, took it off of the track, and secreted it in some bushes. It further appeared circumstantially that the shot which killed him was fired about ten minutes after the log train passed, and about thirty minutes before the supply train following the log train arrived. The body was discovered by the members of the crew of the supply train. Some of them remained with the body, others going with the train to Call, from whence the officers came to the scene of the homicide.

The State's theory was that the appellant had secreted himself on the left hand side of the tramway, lay in wait for the deceased, and shot him unawares. This theory was supported by various circumstances. A witness by the name of Louie Johnson, who was a member of the crew of the log train, testified that as he was passing on that train he saw a man, whom he identified as the appellant, at a point about 50 or 100 feet from the tramway on the left hand side near a log. He described him as wearing a cap, having a single-barrel shotgun in his possession, and having with him a small red dog. The appellant was arrested on the same night at his home. He was the owner of a single-barrel shotgun, which was found at his place of residence, and there was testimony that it had been recently fired. Johnson, the State's witness, identified a cap which was found at the premises of the appellant as one worn by him at the time he was seen near the railroad, before the homicide, and also identified a dog which was found at appellant's house as the one that was with him on the occasion mentioned. An inspection of the appellant's shoes was made, and it was found that one of them had a worn place on the sole. The evidence of the State's witnesses was contradictory as to which shoe was in this condition. The shoes were not preserved, though they were described as about a number eight. The country was dry and sandy,

but witnesses testified to have seen tracks along the creek, and which they claimed had been made by a person wearing a shoe with a worn sole, similar to that in the shoe of appellant, though their evidence was quite vague and somewhat contradictory and no marked peculiarity in the shoe was developed. At a point along the tramway apposite that upon which the deceased was found and about fifty feet distant, there was a bush which bore evidence of having been cut with a knife, and evidence that a dog had scratched the ground and laid down near a log at this point; and there was found some cigarette stumps and an empty tobacco can here also. Appellant when arrested was in possession of a pocket-knife, which was described as having a stain upon it, and it was claimed that this stain was such as would have resulted from cutting the bush like the one mentioned. There was a 12-gauge empty shotgun shell found somewhere in the vicinity of the homicide.

The deceased, when found, had some money in his pocket—several dollars—his watch was in his shack, and there was no evidence of robbery other than that some of the witnesses testified that he was in the habit of carrying a leather purse.

The appellant was a negro, and lived in a negro settlement about a mile and a half from the scene of the homicide, had lived there for a number of years, bore a good reputation; had had no relations, business or otherwise, with the deceased, and had no cause of enmity toward him so far as was developed in the evidence. On the contrary, these seem to have been negatived. The only suggestion of motive in this connection was the fact that a negro by the name of Westbrook had some time prior to this homicide been killed by a constable by the name of Lindsey, and that at the time he was killed Westbrook was resisting arrest, and the deceased was in company with the constable at the time. There is no relation between Westbrook and the appellant shown; no threats made by appellant; and nothing to show that he should have or did take offense or entertain resentment against Kenny in consequence of the incident mentioned.

As defensive matter, appellant presented the theory of alibi. This he supported by a number of apparently disinterested witnesses, some of them white men all of their testimony going to show that at the time the shot was fired the appellant was at the post-office and store of a man named Wilson about a mile and a quarter distant from the scene of the homicide; that he went to the store on horseback and returned on horseback; that he was not in possession of a gun; was not followed by any dog; and that he did not wear a cap but wore a hat. The witnesses supporting the theory of alibi were well acquainted with him were definite in their statements, several of them had talked to him; and if their testimony was true it went pertinently to show that the fatal shot was not and could not have been

fired by appellant, but that it must have been fired by another. He also presented the defensive theory that there were other persons in proximity to the homicide and that circumstances relied upon did not exclude the reasonable hypothesis that some one of these other persons may have been the assassin. In support of this theory, it was shown that the deceased had long been in the employ of the Kirby Lumber Company, that some months prior to his death he had been absent and during his absence his place was filled a part of the time by a negro by the name of Tom Johnson, who lived about three miles in a northwesterly direction from the scene of the homicide, and by another member of the Johnson family; that Eb. Johnson, a son of Tom Johnson, on the day of the homicide about an hour prior thereto, had gotten off of a train at a water tank not a great distance from the scene of the homicide; that after the homicide Eb. Johnson was arrested and was found in possession of a double barrel shotgun, 12-gauge, which had been recently fired. The officers who first came to the scene of the homicide arrested Eb. Johnson and took him to Call. On their return from Call, they talked with the witness, Louie Johnson, who was a brother of Eb Johnson, and after talking with him they released Eb Johnson and took the appellant in custody. There was no explanation of Eb. Johnson's whereabouts further than his own statement that he did not commit the homicide.

There was testimony of the witness Windham that he was waiting in the woods for surveyors, and that some two or three hours before the homicide he saw two negroes, whom he did not recognize, and there is no suggestion that either of them was the appellant. These negroes walked down the creek and in the direction of the tramway, and were carrying a single-barrel shotgun. There was no further evidence with reference to the identity of these negroes; no evidence that the tracks along the creek or the empty shell that was discovered or the cigarettes or the tobacco box were not connected with them.

A witness, who was on the supply train which found the body of the deceased, shortly before the body was discovered and in the same vicinity saw two persons walking on the railroad track in the direction from which his train was coming. He described them as what he took to be a man and a child. They were walking away from the place where the body was found, though the distance therefrom he does not state. They disappeared, and there is no explanation of their presence, either their identity, nor evidence negativing their participation in the homicide, nor identifying them from the two negroes who were seen in the woods, nor showing that the tracks which were used as evidence against the appellant were not made by them, or one of them. There was evidence that there were a great many single-barrel shotguns in the vicinity; that

there were many negroes living there possessing such weapons; that the condition of the ground being sandy and dry rendered it very difficult to identify tracks; and that before the investigation for the tracks which were used to support the inference of appellant's guilt there were many people in the vicinity; and it was not shown that they did not and could not have made the tracks. One witness testified that about the premises the whole wood gang, which he described as about seventy men, congregated about the scene of the homicide.

The court gave the charge on circumstantial evidence in the following terms:

"In order to warrant a conviction upon circumstantial evidence, each fact necessary to establish defendant's guilt must be proven by the evidence to the satisfaction of the jury beyond a reasonable doubt; all such facts must be consistent with each other, and with the defendant's guilt, and all the circumstances taken together must be of a conclusive nature, leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the defendant committed the offense charged, and must exclude every other reasonable hypothesis except that of the defendant's guilt."

There were no affirmative defenses submitted.

The charge was excepted to because there was a failure to instruct the jury that if they believed from the evidence, or if they had a reasonable doubt thereupon that any other person than the appellant killed the deceased, or if the circumstances did not exclude the idea that another person killed deceased, then to acquit him. A similar exception was taken because the court failed to instruct the jury to acquit if they believed that Eb Johnson killed the deceased or if the circumstances did not exclude the theory that he did so. Special charges were requested by the appellant in line with these exceptions, and were refused by the court. We think the law entitled the appellant to have the jury instructed affirmatively upon his defensive theory. There was presented the theory that Eb Johnson was the murderer; also that the shot was fired by some one of the unidentified parties who were shown to have been in the proximity of the homicide. Defense also presented the affirmative theory that the homicide must have been the result of the act of someone else, the appellant being at a place remote from the scene of the homicide, rendering his participation impossible. There was no specific exception to the charge complaining of the failure to submit the defense of alibi. It was manifestly in the case, and the failure to submit it emphasizes the force of appellant's contention that the court was in error in failing to amend his charge in response to the exceptions and special charges so as to direct the mind of the jury definitely to the theory pre-

sented by the evidence that the offense was committed by another and not the appellant. See Wheeler v. State, 56 Texas Crim. Rep., 547; Taylor v. State, 81 Texas Crim. Rep., 347, 195 S. W. Rep., 1147. This error, in our opinion, requires a reversal of the judgment, which is ordered.

*Reversed and remanded.*