### ERNEST MCNEIL V. THE STATE.

No. 21648. Delivered October 8, 1941.

The opinion states the case.

*Willis & Via,* of Pampa, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Murder without malice is the offense; the punishment, five years in the penitentiary.

The indictment charged that the appellant killed deceased by stabbing him with a knife.

The parties were negroes. All events occurred at night. "Ashtola's Place," where the killing occurred, consisted of two rooms. In the rear room, on this occasion, a dice game was in progress. Appellant went broke in the dice game and sent his watch to Ashtola, who was in the front room, with a request to borrow three dollars on it, so that he could stay in the game. Before making the loan, Ashtola asked deceased, who was standing nearby, to examine the watch. This the deceased was attempting to do when appellant entered the room, and, seeing deceased with his watch, snatched it out of his hands and demanded to know, "Who in the hell told you to take my watch? I didn't send it to you, I sent it to Ashtola, you keep your God damn hands off of it," whereupon deceased slapped appellant. A fight between them was prevented. Ashtola ordered deceased to leave, which he did. As he left, deceased made the remark that he was going home. Appellant remained in the room for a time, and then left; and, as he reached the door, Archie Ellis, who, it appears, was friendly to appellant, said to him:

"I have got the black son of a bitch back here." Deceased was at that time near another house to the rear of the building. When appellant saw deceased, he started running towards him, and, as he did so, he was seen to run his hand in his pocket. Upon reaching deceased, appellant struck him, knocking him down, and, jumping on top of him, made a general attack, striking and beating the deceased. Appellant was pulled off of deceased, and, as a last act of violence to him, stomped him on the head with his feet. As he was doing this, he said: "That black son of a bitch aint got enough." At the conclusion of the attack, deceased was dead, with numerous cuts and wounds upon his body. Eight of these wounds were described by the undertaker who removed and embalmed the body. One of these

wounds he described as a cut which penetrated the lung, while another he described as a cut which penetrated the apex of the heart. The undertaker expressed the opinion that the heart injury caused death, and that it was inflicted with a knife. Near the body was found a knife, or handle of a knife, with a blade broken or missing therefrom. The broken blade was also found nearby. These were covered with blood, and were introduced in evidence by the State as the instrument with which the injury was inflicted. No arms or weapons were found on the deceased.

The foregoing presents the State's theory of the killing.

Appellant's version, supported chiefly by his own testimony, does not vary materially from that of the State up to the time the deceased left the building. Appellant says that, as deceased left, he heard him say that he was going to kill him if he came out of the house, and that, when he did go out of the building, deceased, in keeping with his threat, began an attack on him with some object, the nature or description of which he was unable to give, and that he defended himself against the attack of the deceased. Appellant denied any intent to kill; he denied knowing that he had killed deceased, and denied ownership or possession of the knife with which the State claimed the deceased was killed. In this connection, however, he testified, upon direct examination, that he had a knife upon this occasion, and that "When he (deceased) got me down there it is possible that I could have had my knife out; I know I was trying to defend myself, and I might have got my knife out; when he hit me with this object it just dazed me, and I was trying to do all I could to help myself, and I might have struck at him with my knife when he got me down; I do not know about that for sure."

Appellant further testified, as he was being led away from the deceased after the difficulty, he saw Archie Ellis approaching deceased, with something in his hand, and that, as he looked back, he saw deceased and Archie Ellis fighting. In this connection, there was testimony from others to the effect that Archie Ellis was present when the difficulty began; that, at that time, he had an unbroken beer bottle in his hand; and that, after appellant had been pulled off of deceased, and after he had been led away, Ellis remained with the deceased and was next seen leaving the body with a part of the broken beer bottle in his hand.

No witness testified that appellant at any time had a knife in his hands or that appellant struck or cut the deceased with a knife. The bloody knife and blade were not identified as belonging to, or as having been in the possession of, appellant, nor was there any testimony that such knife did not belong to Archie Ellis or that it had not been previously in his possession.

Appellant insists that the facts are insufficient to authorize the jury's conclusion of guilt. With this contention we do not agree. The facts, as a whole, are sufficient to authorize the jury to convict.

Appellant insists that the facts raise the affirmative defense that Archie Ellis killed deceased after the appellant had been led away from the scene of the difficulty, and that the trial court erred in refusing to give his special requested charge to the effect that if the jury believed or entertained a doubt that Archie Ellis killed deceased to acquit.

In support of this contention, appellant points especially to the following facts: (a) the absence of any direct testimony that appellant struck deceased with a knife or other instrument; (b) the absence of any proof that the bloody knife with which the State claimed the deceased was killed belonged to appellant or was in his possession at the time of or prior to the killing; (c) the absence of any proof negativing the fact that such knife belonged to Archie Ellis or was in his possession prior to the killing; (d) the affirmative testimony of appellant to the effect that, as he was being led away from deceased, he saw Archie Ellis and deceased fighting.

Under the facts as a whole, together with the further fact that it was not contended by the State that appellant and Archie Ellis were acting together as principals in the alleged killing, the case not having been submitted to the jury upon that theory, the conclusion is reached that the appellant was entitled to have the jury instructed in accordance with his request, and that, in refusing to so charge the jury, the learned trial court fell into error, requiring a reversal of the case. It is a fundamental rule that, where the facts raise an affirmative defense, the accused is entitled to have the jury instructed in keeping therewith. The authorities supporting the rule are numerous and will be found collated in 12 Texas Digest 643; James v. State, 215 S. W. 459, 86 Tex. Cr. R. 107.

Appellant complains because the undertaker was permitted to testify that the injury to the heart was made with a knife, the objection being that same was an opinion and conclusion of the witness. In this connection, the record reflects that the undertaker, in embalming the body, made a definite examination of the heart, and without objection from appellant, referred to and described the wound as a "cut." We are not in position to hold that under such a state of facts it would be the expression of an opinion for the witness to say that a cut is made with a knife. When a wound is described as a cut, the ordinary interpretation given that term is that it was made with a knife or cutting instrument. The evidence did not suggest that the heart wound was not a cut. Appellant's contention is, therefore overruled.

Appellant objected to the introduction in evidence of the knife and blade found near the body. Under the facts here presented, the objection went to the weight of the evidence and not to its admissibility. The weight to be given the testimony is for the jury. The objection was correctly overruled.

In view of another trial, attention is called to the fact that, in submitting murder with and without malice, the charge should be so framed as to authorize an acquittal upon the jury's entertaining a reasonable doubt as to the guilt of the accused; and in no event should the charge be susceptible of a construction that the charge on reasonable doubt did not apply to murder without malice.

Under the record as here presented, the charge submitting self-defense is not subject to the exceptions urged.

The other bills of exception have been examined and are overruled.

For the error discussed, the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.