## ALBERT ROWAN v. THE STATE.

### No. 6533. Decided February 13, 1924.

### Rehearing denied March 26, 1924.

**1.—Murder—Charge of Court—Principals—Presence of Defendant.**

Where, upon trial of murder, the court charged the jury that if they believed beyond a reasonable doubt that appellant and others made an agreement to arm themselves and rob the postoffice at Dallas and intended if resistance was made to kill any clerk or employee of said postoffice, and that in pursuance of said intent and agreement said other persons while so acting killed the deceased and that this appellant was not actually present at the time and place of the killing, but was doing some act carrying out his part of the common intent and design they should find him guilty of murder, there is no reversible error under the facts of the instant case.

**2.—Same—Circumstantial Evidence—Charge of Court.**

Where, upon trial of murder in the perpetration of robbery, the evidence was direct there was no error in refusing a charge on circumstantial evidence.

**3.—Same—Juxtaposition—Circumstantial Evidence—Charge of Court.**

It is ably argued in appellant's brief that the facts constituting robbery are but circumstances; yet even if they were such they placed appellant in such immediate juxtaposition to the robbery and homicide and so connected him therewith and so clearly established the *factum probandum,* i. e., where appellant agreed to be, and that he was watching and ready to do all that he agreed to do in the transaction and was actually doing it, as to obviate the need for a charge on circumstantial evidence; however, it was not necessary to rely upon this under the facts.

**4.—Same—Confessions—Circumstantial Evidence—Charge of Court.**

The rule that a confession takes the case out of circumstantial evidence does not require that the words of the confession in exact language mention the killing, theft, robbery, etc., or state in full in statutory language that he did the thing essential to guilt. Following     Heard v. State, 24 Texas Crim. App., 103.

**5.—Same—Presence of Principal.**

It is not necessary in order to make one present within the meaning of the statute that he be in immediate contact with the other actors. Following     Bass v. State, 59 Texas Crim. Rep., 186, and other cases.

**6.—Same—Principals—Rule Stated.**

If one takes some part in a criminal enterprise, it is not necessary that he take an active part, if in the carrying out of the final criminal act he is participating in the common plan by doing something or being ready to do something in furtherance thereof, at a place other than that where the act is consummated.

#### 7.—Same—Bill of Exceptions.

This court is not apprised by the bill of exceptions as to what the answers would have been and in this condition of the record is unable to ascertain the error, if any, of sustaining the objections to the testimony.

#### 8.—Same—Bill of Exceptions—Question and Answer Form.

Where the bills of exception are in question and answer form they cannot be considered by this court on appeal.

#### 9.—Same—Requested Charge.

Where the proposition contained in the requested charge was substantially comprised in the main charge, the same was correctly refused.

#### 10.—Same—Charge of Court—Theory of Defense.

Where, upon trial of murder perpetrated during robbery, the different charges of the court fully presented the law of the affirmative theory of the defense, there was no error in refusing a requested charge on the same subject.

#### 11.—Same—Changing of Venue—Adjoining Counties.

Where the court granted appellant's motion for a change of venue, and a, written order reciting that in his opinion a trial alike fair to the State and defendant could not be had in Dallas County, and that the same conditions prevailed in surrounding counties and that, therefore, the case would be transferred to Taylor County, there is no reversible error.

#### 12.—Same—Change of Venue—Practice in Trial Court.

No exceptions having been taken when the order was entered changing the venue, it being apparent that the venue had already been changed, and the case filed and docketed in Taylor County at the time the motion was presented to the Dallas County District Court, the matter presents no error. Following: Sapp v. State, 87 Texas Crim. Rep., 606, and other cases.

#### 13.—Same—Continuance—United States District Court—Former Jeopardy.

There was no error in overruling an application for continuance until defendant's appeal from a conviction in the United States District Court for robbing a postoffice there could be decided, as former jeopardy could not have been successfully pleaded. Following Taylor v. State, 41 Texas Crim. Rep., 564, and other cases.

#### 14.—Same—Rule Stated—Former Jeopardy—Same Volition.

It is not always true that one transaction will constitute but one offense. The fact that the injuries were both inflicted in one criminal transaction is not sufficient. The volition must be identical. Following Ex Parte Jones, 83 Texas Crim. Rep., 12, and other cases. In the case at bar, the element of loss of life is necessarily involved, which in no way figured in the federal indictment or conviction and was not necessary to be alleged or proved.

#### 15.—Same—Appeal—Habeas Corpus—Federal Court.

There was no error in the court's refusal to suspend further proceedings in the instant case, until an appeal taken by defendant from the refusal of a writ of habeas corpus by the federal judge could be decided. Following Gaines v. State, 251 S. W. Rep., 246.

**16.—Same—Jurisdiction—Preliminary Orders—Change of Venue.**

Defective preliminary orders of the court of original jurisdiction before the change of venue was had, cannot be attacked by complaint made afterwards.

**17.—Same—Bill of Exceptions—Evidence—Search Warrant.**

There was no error in overruling defendant's complaint that the State admitted over his objection testimony as to what was found in his house by searching party of officers who went there without any search warrant. Following: Welchek v. State, 93 Texas Crim. Rep., 271.

**18.—Same—Argument of Counsel—Bill of Exceptions.**

Where the bill of exceptions sets out generally that appellant excepted to much of the argument of counsel and that the court instructed the jury not to consider much of same, but nowhere particularizes or indicates to what part of the argument appellant's exceptions were directed or what the court instructed the jury not to consider, the same could not be considered on appeal. Following: Simmons v. State, 93 Texas Crim. Rep., 421, and other cases.

**19.—Same—Sufficiency of the Evidence Corroboration—Accomplice.**

Where, upon trial of murder, the testimony amply corroborates the accomplice and shows the finding of a large sum of money similar to that taken in the robbery, etc., the conviction is sustained.

Appeal from the District Court of Taylor. Tried below before the Honorable W. R. Ely.

Appeal from the conviction of murder; penalty, fifty years imprisonment in the penitentiary.

The opinion states the case.

*Jed C. Adams, W. W. Nelms, M. T. Lively, W. B. Harrell, J. F. Cunningham,* and *Robert B. Allen, for appellant.*—On question of circumstantial evidence: Eckart v. State, 9 Texas Crim. App., 105; Crowell v. State, 24 id., 409; Leftwich v. State, 34 Texas Crim. Rep., 489; Guerrero v. State, 46 id., 447; Rollins v. State, 203 S. W. Rep., 355.

On question of evidence on defendant's presence: Howard v. State, 35 Texas Crim. Rep., 137; Cannady v. State, 29 Texas Crim. App., 538; Clay v. State, 40 Texas Crim. Rep., 560.

On question of charge of court on principals: Taylor v. State, 50 Texas Crim. Rep., 379; Pye v. State, 171 S. W. Rep., 743.

On question of former jeopardy: Moore v. State, 33 Texas Crim. Rep., 166; Herera v. State, 35 id., 607, and cases cited in opinion. U. S. v. Mason, 213 U. S., 118; Westbrook v. State, 225 S. W. Rep., 750; Maines v. State, 37 Texas Crim. Rep., 617.

On question of jurisdiction of State and Federal Courts: Jugiro v. Brush, 140 U. S., 291; Rogers v. Peck, 199 id., 436; U. S. v. Tarbell, 13 Wallace, 297; Ableman v. Booth, 31 How., 506.

On question of want of search warrant: Weeks v. U. S., 232 U.

S., 383; Gouled v. U. S., 254 U. S., 65; Amos v. U. S., 254 U. S., 65; Bush v. U. S., 269 Fed., 455.

*R. G. Storey,* Assistant Attorney General, *W. J. Cunningham,* District Attorney, *Maury Hughes,* District Attorney, and *W. L. Curtis* and *E. R. Howell,* Assistant District Attorneys, for the State.— On question of sufficiency of the evidence: Middleton v. State, 217 S. W. Rep., 1048; Kolb v. State, 228 id., 212, and cases cited in opinion.

On question of corroboration: Sexton v. State, 49 Texas. Crim. Rep., 253; Nourse v. State, 2 Texas Crim. App., 317.

On question of circumstantial evidence: Issacs v. State, 36 Texas Crim. Rep., 505; Cabrera v. State, 56 id., 141, and cases cited in opinion.

On question of change of venue: Taylor v. State, 197 S. W. Rep., 196, and cases cited in opinion.

On question of continuance: Jones v. State, 19 Texas Crim. App., 453; Johnson v. State, 20 id., 227; Diaz v. U. S., 223 U. S., 442, and cases cited in opinion.

On question of appeal from Federal Court: Pierce v. Creecy, 210 U. S., 387; in re Lennon, 150 U. S., 393.

On question of argument of counsel: Taylor v. State, 89 Texas Crim. Rep., 112.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Taylor County of murder, and his punishment fixed at fifty years in the penitentiary.

On January 14, 1921, the Jackson Street Post Office in Dallas was robbed by a group of men, and George Street, an employee in said post-office, was shot and killed. Mr. Smith, another employee, was seriously wounded but recovered. · A large quantity of money and certificates were taken, about four thousand dollars of the money being in one and two dollars bills. The robbery occurred about 6:50 P. M., and on the same night near Lake Worth in Tarrant County a large quantity of the property was recovered, the bags being split open with sharp instruments and some of the contents having been taken out. A man named Scrivenor was arrested the same night and as a result of information given by him investigations were set on foot which led to the arrest of appellant. His indictment, trial and conviction followed. The matters presented on behalf of appellant will be discussed by us in the order in which they are presented in his brief.

Appellant by motions and requested instructions asked that the jury be told to acquit on the ground that the evidence failed to support the proposition of his guilt as a principal offender in the murder of Mr. Street, he being charged only in that capacity. Denial

of all the above is ably and urgently presented here as error. The learned trial judge correctly charged the jury that if they believed beyond a reasonable doubt that appellant and other named persons made an agreement to arm themselves and rob the Jackson Street Postoffice in Dallas County, and intended, if resistance was made, to kill any clerk or employe of said postoffice, and that in pursuance of said comon intent and agreement said other persons while so acting killed George Street and that this appellant was not actually present at the time and place of the killing but was doing some act carrying out his part of the common intent, design, etc., they should find him guilty of murder. The charge also submitted the theory of the actual presence of the appellant at the time of the killing and of his former agreement to commit said offense.

The record in this case as well as the statement of facts is lengthy but has received careful scrutiny at our hands. Scrivenor, an admitted participant, details his meeting with appellant and the other named persons at the St. James Hotel in Dallas and their plans, and the various steps taken by them in carrying same out, to commit the robbery. According to said plans the proceeds of the robbery were to be taken to appellant's house in the city of Dallas where he was to meet those actually committing the robbery and to divide. According to the State's contention appellant was the brains of the transaction, had been about the postoffice and knew the movements of its employes and the shipments of money from the Federal Reserve Bank, and was the one who made the plans and, being originally of Dallas County and well known, he was to hold himself aloof from the actual execution of the robbery but was to be near by and was to aid and assist the escape of those actually doing the robbery by keeping close watch upon the transaction and if there was pursuit of their car as they fled from the scene of the robbery, he was to fall in behind them and as an apparently innocent bystander interfere with the pursuit by getting his car in the way of any pursuing car and if necessary strip the gears of his car in order to check pursuit. Each of the men engaged in the actual robbery was to have two guns. In discussing this feature of the plans in a room at the St. James hotel, which had been occupied by appellant for some time prior to the robbery and in which he was observed and seen in consultation with a number of men during the afternoon of the robbery, it was found that there were not enough guns to furnish each man two. Scrivenor said that at this juncture appellant got fifty dollars from another member of the party named Luna and went over and redeemed two pistols which he had ''in soak'' and that he returned in a few minutes with an automatic and also an ivory handled pistol, this last trans- action occurring in the neighborhood of 4 o'clock. One Morris, not a participant in any way, testified that between 3:20 and 4:30 o'clock P. M. on the day of the robbery appellant came to his place and paid

him fifty dollars and redeemed two pistols which were pledged, one an automatic and the other a white-handled pistol. A Mexican maid at the St. James hotel testified that appellant had for some time had a room at said hotel, and that on the afternoon of the robbery she saw him with a number of other ''mens'' in said room. Scrivenor testified in detail to the agreement which was in substance that he with all of the others except appellant were to go to the postoffice, commit the robbery, secure the sacks of money or mail and escape in a car to appellant's house: Scrivenor being an expert driver, was to handle the automobile while the others were in the building executing the robbery. Appellant was to be at a near by place where he could see and observe what was going on and have his car in readiness to aid them in getting away as above stated. The route from the postoffice to appellant's house had been gone over carefully that day and agreed upon and was followed by the robbing party after the assault, murder and robbery was committed. Scrivenor testified that the party remained at the St. James hotel until some time after 6:30 P. M., and then separated leaving one and two at a time and meeting at their cars, appellant proceeding to the point where he was to station himself and be doing his part of the actual transaction. The robbing party went to their car and after driving a little way decided that they had too much in the way of grips and overcoats in their car, and that they would go down and find appellant and leave two suit cases with him. They drove to Jackson Street, the street on which the postoffice was located, and down near the postoffice about at Houston Street and when near Houston Street they parked their car and then discovered appellant's car not far away. When they went to appellant's car he walked up from some near by place and they explained to him and put the suit cases in his car, and then drove on up to the postoffice where the scheme was executed as far as the robbery and murder were concerned in a few minutes. Appellant's car was parked on Jackson Street just around the corner from Houston Street and they left him standing on Jackson Street by a drugstore in plain sight of the postoffice and where he could observe whatever was done around it, and in a position where his car could fall in behind the robbing party if necessary. Almost at once after getting into the postoffice the shooting took place in which Mr. Street was killed, and the whole occurrence was over in a very short time. A large number of shots were fired. The party secured several sacks of mail or money and jumped into their car, the engine of which was left running, and drove out Jackson Street over the route agreed upon to the appellant's house. They did not observe appellant as they left the postoffice and drove away. Some of them looked back but saw no one pursuing them. After they got to appellant's house, to quote from witness Scrivenor: ''About the time I got in the room Mr. Rowan came in. He rushed in the

room and says, 'Well, boys, everything is all right; nobody followed
you.' He says, 'I have been behind you all the way,' and he says,
'You got clean away.' '' Witness then detailed the opening of the
sacks, the division of the money, and that he and another took their
part together with the mutilated sacks, the certificates and other
things which they did not divide and left in a car to go to Fort
Worth. He also detailed their leaving the loot where it was found
by the officers later.

Do the above facts if believed by the jury show that appellant was
doing his part of the scheme or, plan agreed upon at the time of the
homicide? We are constrained to believe they do. Omitting the
question of corroboration of an accomplice which will be discussed
further on, and is a different question from that now before us, we
observe that appellant's part of the plan was to place himself where
he could render aid in preventing pursuit and capture, if necessary.
If the robbers were followed, and only in such event, was he to be-
come active in the proceedings. In such event he was to drive in
ahead of the pursuers, manipulate his car, strip its gears if necessary,
and thus with apparent innocence hinder pursuit and enable his con-
federates to make their escape. Pursuit in all human probability
would emanate from the vicinity of the postoffice, the scene of the
robbery. To station himself near the postoffice would appear to be
the natural act of appellant under the circumstances. If no one
followed from the neighborhood of the postoffice and reasonably
near to the departure of the car containing the robbers, appellant's
further active participation in preventing pursuit would seem need-
less. If he watched until sure that no one from the neighborhood of
the postoffice followed, or until the robbers' car turned into Young
Street from Jackson, he would seem to have carried out his part or
so much of his part as involved action at the time and place of the
homicide. He was, with his car parked on Jackson Street and head-
ed in the direction the robbers would go, where he could see and note
the movements of cars around the postoffice when the robbing party
left him just before the robbery and homicide. The postoffice was
just a block away. They committed the robbery and drove over the
agreed route direct to appellant's house. Almost at once he came in
and by his statement then made affirmed that he knew what had oc-
curred and had carried out his part in the entire transaction. ''No-
body followed you—I have been behind you all the way.'' This state-
ment coupled with the other facts detailed seem to render irresistible the
conclusion that appellant was doing the part assigned to him in the
transaction. We are not inclined to believe that Scrivenor's state-
ment that one of the boys kept looking back to see if there was any
pursuing cars and that there did not seem to be anyone chasing
them, could in any way prevent the jury from believing nor this
court from concluding that the testimony, if true, showed that ap-

pellant had been doing the part assigned to him in the commission of the offense, in such manner as to make him a principal therein.

Nor are we able to agree that the refusal to charge on circumstantial evidence was erroneous. That Street was killed by Scrivenor's party in the robbery of the postoffice, was established by direct evidence. The only issue remaining was as to appellant's part, if any, in the transaction. Scrivenor swore positively as to what that part was, and to the fact that when the robbing party went to the postoffice, appellant with his car was stationed on Jackson Street a block away in the direction they were going and where he could observe what took place at the postoffice, and could see if there was pursuit and could then complete his part if action by him became necessary by getting in front of the pursuing cars and hindering them. There were no pursuers. The robbing party went to appellant's house. Hardly had they arrived when by direct evidence appears in testimony the statement of appellant: "You were not followed; I have been behind you all the way." It is ably and ingeniously argued in the brief for appellant that these facts are but circumstances. If they were such, they placed appellant in such immediate juxtaposition to the robbery and homicide and so connected him therewith and so clearly established the *factum probandum,* i. e. where appellant agreed to be and that he was watching and ready to do all that he agreed to do in the transaction and was doing it, as to obviate the need for a charge on circumstantial evidence upon the theory of juxtaposition. Adams v. State, 34 Texas Crim. Rep., 470. We do not think the State need rely on the doctrine of juxtaposition. One who watches to prevent interruption while his confederates rob a bank or burglarize a building, does nothing more than watch unless intruders come. If his associates are allowed to complete their part without interruption, his part is completed without further act by him. This was true of appellant. His watching was shown by direct testimony and his complete participation made evident by this statement when he reached the house. This conclusion is not by inference from the statement made, but appears by his plain words. The rule that a confession takes the case out of circumstantial evidence does not require that the words of the confession in exact language mention the killing, theft, robbery, etc., or state in full in statutory language that he did the thing essential to guilt. In Heard v. State, 24 Texas Crim. App., 103, the accused said: "I put twelve buckshot through Kinney." In Smith v. State, 28 Texas Crim. App., 309, the accused said: "I did that damned s— of a b— up last night." In White v. State, 32 Texas Crim. Rep., 625, witness said to accused that when the latter told him he was going to kill Ford he did not believe he would do it and the accused replied, "When I tell you I am going to do a thing you can depend on my doing it," and in response to a question said he hit

him two licks and hit him hard. In Hedrick v. State, 40 Texas Crim. Rep., 532, accused said he reckoned he had killed a fellow, that he was caught rustling some meat in a smokehouse and he stuck his pistol out and shot. In Gentry v. State, 41 Texas Crim. Rep., 497 the accused admitted that he branded the alleged stolen animal which was found in his possession. In these cases it is held that the statements of the accused were confessions sufficient to justify the refusal of a charge on circumstantial evidence, and they are cited in order to make plain the fact that the rule obtains even though the words of the confessions do not admit in so many words the theft, the killings, etc., when the words used are words which mean the same.

There is another view of this matter. One is a principal who having advised or agreed to the commission of an offense, is present when it is committed whether he then aids or not. Art. 78, P. C. It is not necessary in order to make one "present" within the meaning of this statute, that he be in immediate contact with the other actors. Bass v. State, 59 Texas Crim. Rep., 186, (appellant about one hundred yards away); Coffman v. State, 51 Texas Crim. Rep., 478, (in the immediate vicinity); Grinsinger v. State, 44 Texas Crim. Rep., 1, (in wood-shed, killing occurring in residence); Mason v. State, 32 Texas Crim. Rep., 95, (in neighborhood). American & English Ency. of Law defines "present" as "Being in view or immediately at hand." McClain's Crim Law, Sec. 200, lays down the proposition that if one takes some part in a criminal enterprise, it is not necessary that he take an active part if in the carrying out of the final criminal act he is participating in the common plan by doing something or being ready to do something in furtherance thereof, at a place other than that where the act is consummated. In the discussion in the Bass case above will be found support on the two propositions that there was no need for a charge on circumstantial evidence because of the juxtaposition of the accused to the crime and the fact that he was near enough to it to make him a principal. By positive evidence in the case before us it was shown that appellant was present, in the sense we have just been discussing. He was a block away, in full view of the place where his associates committed the robbery and murder at the time the killing occurred, and we have then a case in which by direct testimony it is shown that appellant procured arms and means, advised and agreed to the commission of the offense and that he was legally present and ready to go forward with the enterprise when his confederates did the robbing and killing. We are compelled to conclude if not error in this case to refuse to charge the law of circumstantial evidence.

Appellant by bill of exceptions No. 4 complains that certain questions were asked by appellant's counsel the answers to which were not permitted when objection was made by the State. We are not

apprised by the bill as to what the answers would have been and in this condition of the record are unable to ascertain the error, if any, of sustaining the objection.

Appellant's bills of exception Nos. 14a and 14b, 17, 9 and 10 are in question and answer form and under the uniform holdings of this court cannot be considered.

We are not in accord with the proposition that the refusal of special charge No. 4 was erroneous. The main charge fully and fairly presented the law of accomplice testimony in form as often approved by this court. Deviations therefrom and additions thereto, unless sound reason therefor appear other than speculation, would not be encouraged. We have examined the authorities cited in support of the contention in this regard but do not think them in point.

In his charge the learned trial judge told the jury that if they believed that the other conspirators named robbed the postoffice and killed Street but that appellant had no knowledge of their unlawful intent or was not acting with them, or if they had a reasonable doubt thereof, they should acquit; also that if they did not believe that he had previously entered into an agreement with said parties to rob said postoffice, or if they had a reasonable doubt thereof, they should acquit, and the court further gave the following charge:

"You are further instructed that if you believe from the evidence that at the time of the shooting of the said George W. Street in the Jackson Street Post Office at Dallas, Texas, that the defendant was elsewhere and was not doing some act carrying out his part, if any, of the common intent and design of all, if any, or if you entertain a reasonable doubt thereof, you will acquit the defendant."

In our opinion this fully presented the law of the affirmative theory of the defense and we do not think special charge No. 5 presented same any more strongly in favor of the appellant.

The case was originally in Criminal District Court No. 2 of Dallas County. When the case was called for trial appellant made his motion for change of venue on April 5, 1921. The court granted appellant's motion and entered an order reciting that in his opinion a trial alike fair to the State and defendant could not be had in Dallas County, and that the same conditions prevailed in surrounding counties and for many miles adjacent, and that, therefore, the case would be transferred to Taylor County, Texas. No exceptions were taken to this action of the lower court, and his orders were duly carried into a transcript of the proceedings which were made up and certified to by the district clerk of Dallas County on April 8th and forwarded to and filed by the district clerk of Taylor County on April 10, 1921. It is made to appear by bill of excep-

tions No. 1 that thereafter and on April 25th appellant filed a motion in Dallas County protesting against change of venue to Taylor County and excepting to the court's refusal to grant said motion. The judge of said court in a qualification to said bill makes it plain that he refused the motion because the matter had passed beyond his control and jurisdiction. No exception having been taken when the order was entered changing the venue, it being apparent that the venue had already been changed and the case filed and docketed in Taylor County at the time the motion above mentioned was presented to the Dallas County District Court, the matter presents no error. Sapp v. State, 87 Texas Crim. Rep., 606; Taylor v. State, 81 Texas Crim. Rep., 347, 197 S. W. Rep., 196; Baker v. State, 87 Texas Crim. Rep., 213, 220 S. W. Rep., 326. The case last cited seems to settle the proposition as to the necessity that a bill of exceptions be timely taken in order to preserve the error of the transfer if any.

Article 632 of our Code of Criminal Procedure conferring upon district judges the power to transfer cases to such counties as they may think proper under named circumstances, we do not perceive any error in the order of the judge of Criminal District Court No. 2 of Dallas County in changing the venue herein.

When the case was called for trial in Taylor County appellant asked for a continuance until his appeal from a conviction had in the United States District Court at Dallas for robbing said postoffice, could be decided. His proposition was that if said judgment of conviction be affirmed he could plead same in bar hereof because predicated on the same act, transaction and offense. If correctly presented by plea and warranted by the facts shown, it would seem that such continuance would have been proper. Harrison v. State, 69 Texas Crim. Rep., 152, 151 S. W. Rep., 552; Phillips v. State, 72 Texas Crim. Rep., 160, 164 S. W. Rep., 1004, but if it appears that a plea of former jeopardy or conviction could not avail, the application was properly refused. Waiving discussion of the form of said application, same set up that appellant had been indicted in the Federal Court for robbery of the Jackson Street Postoffice on the occasion in question, setting out the indictment in said case, the judgment and averring the identity of the accused, of the offense, and that the same testimony was introduced on said trial in the Federal Court, as would be introduced on the instant trial; that it was there shown and would be here, that shots fired by some of the parties charged, killed George Street. We observe that in passing on this application the trial court could only act upon what was before him, but this court has now before it the facts as given in testimony in the instant case. Substantially stated, it appears that three employes of said postoffice were at work in what was called the registry room when the robbers appeared. Two or three

men came to the registry window with pistols presented. Street, deceased herein, was at one table and a Mr. Smith and Miss Collum, the other employes mentioned, were at another table, or on opposite side of the table at which Smith was. Smith was wounded but recovered and testified. He says he was struck by the third shot and fell to the floor; that deceased was in another corner of the room. A number of shots were fired, some striking walls, some windows, some partitions and some human beings. Miss Collum testified that she and Smith were near each other and one of the parties at a window shot directly at them and that Street rushed from the room. She did not see him when he was shot down but saw Smith lying on the floor. Scrivenor swore that each of the men who went into the postoffice had two guns and that while he did not go in, it seems to him that they all fired together. The general rules of jeopardy and former conviction are well understood and. need not be reviewed.

The State ably contended that conviction in the Federal Court for a violation of the Federal law is no bar to a subsequent prosecution in the State courts under a State law though the act which is the basis for the prosecution be the same. 8 R. C. L. 149; 16 Corpus Juris, 282; Wragg v. Penn., 94 Ill., 11; State v. Moore, 143 Iowa, 240; People v. Welch, 141 N. Y., 266; Marshall v. State, 6 Nebraska, 120, and People v. Michigan, 161 Mich. 397, are cited as authority for this proposition. We do not dispose of the matter on this ground. Under facts such as appear in this record in our opinion the trial court need not have submitted to the jury the plea of former conviction, if that question had been before him, and it therefore follows that we believe the refusal of the continuance to enable the appellant to offer such plea in case of an affirmance, was not erroneous. The proposition is not a new one in this State. In Taylor v. State, 41 Texas Crim. Rep., 564, facts very similar and involving the identical principle, were discussed at length and this court held that upon a prosecution for murder it was not error to refuse to submit a plea of former conviction of assault to rob, the two charges growing out of the same transaction, in the identical sense as that expression is used here. Many of the same authorities cited by appellant in his brief in the instant case were there relied upon and reviewed. In discussing Augustine v. State, 41 Texas Crim. Rep., 59, it was said:

"The proof showed that the murder of both parties occurred in one and the same transaction, yet that they were two distinct acts; that is, each was killed by a distinct shot. It was held that the former acquittal was not a bar."

It was also stated in the opinion that if proof had showed that but one shot was fired causing the death of both, the plea might be good. This statement also occurs: "But here the testimony

shows that the parties were killed by different acts." Mr. Bishop is quoted as saying:

"Obviously there is a difference between one volition and one transaction; and on the view of our combined authorities there is little room for denial that in one transaction a man may commit distinct offenses of assault or homicide upon different persons and be separately punished for each."

Other authorities are cited on this proposition which seems settled beyond question. The same conclusion as reached in the Taylor case was also reached in Keaton v. State, 41 Texas Crim. Rep., 621, a companion case to that of Taylor, the opinions being written by different members of this court. In those cases the transactions involved did not progress far enough to be robbery, but did pass beyond the commission of the offense of assault by force with deadly weapons. In the development of the transaction consisting of the attempted robbery of a train, the fireman was shot and killed. There can be no legal distinction drawn between either the facts or the principle involved and we think those cases were correctly decided and are authority for our conclusion that there was no error in the instant case in refusing the application for continuance. In further review of the authorities on this point we observe that in Ex parte Jones, 83 Texas Crim. Rep., 12, this court recently upheld a refusal of bail where the charge was robbery with firearms, the claim of right to bail resting upon the proposition that bail had been granted in a case involving a charge of murder on the same facts. We said:

"It is not always true that one transaction will constitute but one offense. Wharton's Crim. Law, vol. 1, p. 528. 'The fact that the injuries were both inflicted in one criminal transaction is not sufficient. The volition must be identical.' "

Many authorities are collated in that opinion. We further observe there is nothing in the Federal Act for violation of which appellant was convicted, (Sec. 196 P. C. of U. S., approved March 4, 1909) which makes the death of any custodians of the mail to change or add to the gravity of the crime or increase the penalty for the offense. The penalty is the the same if such custodian be wounded as it is where the assaulting party merely puts his life in jeopardy by the use of a dangerous weapon. We further observe that it was only alleged in the Federal indictment that the accused and others made an assault on the custodians of the mail and with dangerous and deadly weapons and by wounding some of them with pistols, thereby put the lives of such custodians in jeopardy and obtained from them the property. The facts here plainly show not only that a number of men were concerned in the assault and that all used pistols and made murderous assaults on Smith as well as on Street but it also appears that it was physically impossible that the

same shot which killed Street could have inflicted the wound upon Smith. Reverting to the case of Ex parte Jones, supra, we note that the opinion further stated: ''Murder and robbery are made by statute separate offenses embodying different elements depending not necessarily upon the same facts.'' In the case at bar the element of loss of life is necessarily involved which in no way figured in the Federal indictment or conviction and was not necessary to be alleged or proven.

Appellant has his bill of exceptions No. 6 to the refusal of the trial court to suspend further proceedings herein until an appeal taken by him from the refusal of a writ of habeas corpus by the Honorable Federal Judge of the Northern District of Texas, could be decided. A very similar question was before us in Gaines v. State, 95 Texas Crim. Rep., 368, 251 S. W. Rep., 246, and decided adversely to appellant's contention.

Defective preliminary orders of the court of original jurisdiction before the change of venue was had, cannot be attacked by complaint made afterwards.

By bill of exceptions No. 11 appellant complains that the State admitted over his objection testimony as to what was found in his house by a searching party of officers who went there without any search warrant. This matter was thoroughly reviewed by us and a decision adverse to appellant's view rendered in Welchek v. State, 93 Texas Crim. Rep., 271. See also Gaines v. State, supra. We adhere to the views there expressed.

Appellant by bill of exceptions No. 40 complains at length of arguments of the State's attorney. The bill does not present any error. It sets out in several pages extended arguments made by said State's attorney and states generally that appellant excepted to much of the argument and that the court instructed the jury not to consider much of the same but nowhere particularizes or indicates to what part of the argument appellant's exceptions were directed, nor what was said by the trial court in his instructions to the jury that they should not consider same. We are thus left to speculate as to the character of objection made to this or that part of the argument and as to the character of instruction given by the court to the jury not to consider the same. We do not believe this to comply with any of the rules, nor do we believe the accused may make a general objection to such an argument at its beginning or end and have this court consider such a bill. Simmons v. State, 93 Texas Crim. Rep., 421, 248 S. W. Rep., 392; Harris v. State, 93 Texas Crim. Rep., 544, 249 S. W. Rep., 485. The proposition of injury does not appear. If the jury gave credence to the facts offered in evidence by the State enough to conclude that the appellant was guilty, same not only showed the shooting down of an inoffensive and unoffending employee in the postoffice by men whose object was

robbery, but same also showed that the man who planned and brought about the robbery and the homicide was this appellant, and the punishment might have been more severe.

We have concluded that the testimony amply corroborates the accomplice. Some of the facts are here referrd to. After the loot was divided at appellant's home Scrivenor and another of the party in a car left saying they were going to Fort Worth. A searching party of officers at about 11 o'clock the night of the robbery found appellant on foot on the road between Fort Worth and Dallas about eight miles from Dallas and he told them that he and one Ben Luna, an associate of appellant at the St. James hotel and who was shown by the testimony to be also involved in the robbery, were in a car which was stuck at a point on said road where there was a detour from the tarvia. The next morning before daylight a searching party of officers went to appellant's home in south Dallas and he was not there. Where he was is not shown. This visit was made as the result of disclosures to officers by Scrivenor. After further talk with Scrivenor the party of officers went back to appellant's home about 9 o'clock that morning and in a grip concealed behind a stove on an upper back porch they found $900 in two-dollar-bills and $810 in one-dollar bills, and also four pistols, one being an automatic and another an ivory handled pistol which corresponded in description to those redeemed by appellant late the afternoon before from the witness Morris. Appellant and Luna had rooms at the St. James hotel, at which rooms by a maid he was shown in conference with a number of men the afternoon of the robbery. His presence at and about the postoffice on other occasions was also shown. The witnesses in testifying as to the identity of the property found with that taken from the postoffice referred to "this money" and "that money" and it is not quite clear whether they positively identified the money found in the grip at appellant's house as that taken from the postoffice, but in our opinion the finding of that sum of money in one- and two-dollar bills in appellant's home the morning after the robbery of the postoffice in which a large sum of money in one- and two-dollar bills was taken, no explanation being offered, in connection with the other facts, is sufficient to justify the conclusion that said money found in appellant's home was a part of the proceeds of the robbery, and that the accomplice testimony was corroborated by other evidence tending to connect him with the commission of the offense.

Appellant proved a good reputation by a number of witnesses who had known him practically all his life, and also introduced strong evidence supporting an alibi, but these were question for the determination of the jury and have been solved by them adversely to his contention. We have given the case both from the standpoint of time and of care, more than the usual amount of scrutiny but have been

unable to bring ourselves to believe error to appear, and the judgment of the trial court is therefore affirmed.

*Affirmed.*

[Rehearing denied, March 26, 1924. Reporter.]