R. H. Harper v. The State.

No. 13596.   Delivered December 10, 1930.

The opinion states the case.

*Crabb & Smith,* of Houston, for appellant.

*O'Brien Stevens,* Crim. Dist. Atty., and *E. T. Branch,* both of Houston, and *A. A. Dawson,* State's Attorney, of Austin, for the State.

ON MOTION FOR REHEARING.

LATTIMORE, Judge.—Conviction for being an accomplice to robbery with firearms; punishment, five years in the penitentiary.

Upon consideration of the appellant's motion for rehearing we have concluded that we erred in affirming this case, and our former opinion being based almost entirely upon a discussion of the facts, will be withdrawn and the following substituted:

Appellant was indicted and convicted as an accomplice, that is, as one who was not present at the commission of the offense, but who,—in the language of Art. 70, P. C.,—before the offense was committed advised, commanded or encouraged another to commit it, or who agreed with the principal to aid him in committing such offense, or who prepared arms or aid of some kind prior to its commission for the purpose of assisting the principal in committing the crime.   In Sec. 700, Branch's Annotated P. C., it is said that an accomplice is one whose acts are all performed before the commission of the offense, and who is not present when it is committed; also that one who, though not actually present at the immediate time of the offense, was then engaged in or doing something in the chain of causation which leads up to the offense and is a necessary part of its accomplishment, would be a principal.   The correctness of this last statement has been announced by the court, as now con-

stituted, in Burrow v. State, 85 Texas Crim. Rep., 133, 210 S. W. 805; Middleton v. State, 86 Texas Crim. Rep., 307, 217 S. W., 1046; Rowan v. State, 97 Texas Crim. Rep., 130, 260 S. W., 591. In the last mentioned case we held one a principal who placed himself in a near-by car at the actual time of the robbery, so that, according to agreement, he could aid in and facilitate the escape of those actually committing the offense.

Considering then the sufficiency of the evidence to show appellant's guilt as an accomplice, what have we in this case aside from the testimony of the two principal offenders, who are of course accomplice witnesses, which tends to show that this appellant advised, commanded or encouraged the principals, or furnished them arms or aid to assist in robbing Mr. Hanschke. No witness other than said accomplices swore to any words or conduct of appellant prior to the robbery which suggests that he had advised, commanded or encouraged them in the robbery.

Suppose it be conceded that the pistol found by Officer Hooper at the time he arrested Merryman, one of the principals, was one which this appellant had let Merryman have at some time antedating the robbery,—would this fact standing alone suffice to show that appellant let Merryman have said pistol with knowledge on his part or purpose on his part that this pistol was to be used in said robbery? We are inclined to think not. To illustrate, Minson, the other principal, swore that the pistol had by him and used by him on the occasion of the robbery was one which he had borrowed from a friend. Certainly this fact would not justify the conclusion that the party who lent Minson said pistol was therefore a party to the crime thereafter committed by Minson and Merryman. As we read the record there is no other testimony tending to show that appellant, prior to the robbery, had furnished arms or aid to said robbers. Appellant took the witness stand in his own behalf and testified that he had driven Merryman and Minson around in the city of Houston at various places, including streets in the vicinity of the robbery, on the morning of the day of said robbery,—he claiming that he was demonstrating to Merryman a car belonging to the brother-in-law of appellant, one Custard, which car Custard had been trying to sell for some time, and in the disposition of which he had invoked the aid of appellant. Mr. Custard was used as a witness for the State, and testified that he had been trying to sell the car, and that he had asked appellant to help him, and that on the morning in question appellant called him up and told him that he had a party who would like to buy the car and that he wanted to take it and demonstrate it to him. Custard said he informed appellant that he would need the car about 11 o'clock, and shortly before this hour appellant called him up and told him he had not succeeded yet in making the trade and would like to keep the car a little longer, to which Custard assented. Custard further testi-

fied that some time about 1 o'clock appellant called him up and informed him that the car had been stolen, and asked him for the number of the car. A number of other witnesses testified that appellant informed them about 1 o'clock that his brother-in-law's car which he had, had been stolen. Appellant also testified that he separated from Merryman and Hinson some time after 12 o'clock, leaving his car at the time they separated at a point on Rusk Street. He said Merryman and Hinson went to some place to get lunch and he went a different way. He testified when he came back for the car later it was gone, and he then telephoned to his brother-in-law that some one had taken it. He further testified that in trying to think what might have become of the car he remembered that Minson had said he was sick, and, thinking possibly one or both of them had driven Minson home in his car, he went down to Minson's house, which seems to have been not very far away, and as he stepped up on the porch he was arrested by a policeman.

We do not deem it worth while or necessary to go into an extended discussion of the contradictions in the testimony of the two principals further than to note that while they said that this appellant agreed with them that he would meet them at a certain point and drive them away, thus enabling them to effect their escape after the robbery, they said that they did not return together to where appellant's car was left but separated as they fled from the scene after robbing Hanschke. Hinson said he went to the place where appellant was to meet them but appellant was not there, and that he got in appellant's car and himself drove it away to a point near an overall factory where he left it and where it seems to have been later found by the officers. Merryman's story as to what occurred to him after he separated from Minson is rather a remarkable one. In one place he said he ran into a weed patch, and that after he concealed himself he obesrved this appellant in the car in question driving up and down the street apparently looking for some one, and that appellant was alone in the car. This testimony is wholly and entirely contradictory of that of Minson. Merryman also testified in another place that after he separated from Minson he ran into a house and from said house telehponed to his sister, who lived in Houston and had a car, asking her to come to said house and get him. He said he did not make any effort to locate appellant's car, and in fact testified that he did not want to make his escape in appellant's car.

The State introduced a Miss Baker who said that sometime between September 15th and 27th she loaned this appellant a pistol which was shown her while on the witness stand, and she affirmed that the pistol shown her was like the one she lent to appellant, but declined to say that it was the same. The officer who arrested Merryman said he found the pistol shown Miss Baker lying on the ground in a weed patch not far from where Merryman was arrested, and that it had red cedar

handles. Appellant affirmed upon the witness stand that he had let Merryman have a pistol several days prior to the robbery, but said the one shown him, which was evidently the one shown Miss Baker, was not in his opinion the pistol that he let Merryman have,—that the pistol shown him had handles made of some kind of soft white wood painted red and did not have cedar handles. Appellant also introduced Merryman's former wife who testified that some time about the first of September she sent Merryman through the mail from Port Arthur a pistol which had black or guttapercha handles. She affirmed that it did not have wood handles like the one shown her while on the witness stand, this also evidently being the one shown Miss Baker. She did affirm, however, that the number on this pistol looked like the number on the one sent by her to Merryman. The State introduced no witness to testify to the number of the pistol found by the officer when he arrested Merryman, and introduced no witness further to testify that the pistol exhibited before the jury had red cedar handles or that the handles were made of soft wood painted red.

We have considered this testimony from every angle and are unwilling to lend our assent to its sufficiency to justify the taking of this young man's liberty for five years. He proved by Harris county witnesses a good reputation in Houston, and by Williamson county witnesses a good reputation in that county. By taking the witness stand and testifying himself he laid down the bars to any attack that the State might see fit to make upon his reputation, but none was made. We think the judgment should be reversed and the cause remanded.

The former opinion is withdrawn, and the judgment of the trial court will be now reversed and the cause remanded.

*Reversed and remanded.*